*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIGNA DESAI,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 21-16250(FLW)<br><br>**OPINION** |

WOLFSON, Chief Judge:

Jigna Desai ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security Kilolo Kijakazi ("Defendant"), denying Plaintiff's application for disability under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence, and accordingly, the ALJ's decision is **AFFIRMED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff, born on November 28, 1969, was 48 years old when she was unable to perform any past relevant work on the last date insured, February 26, 2015. (A.R. 24-25). On June 14, 2016, Plaintiff filed a Title II application for Social Security Disability benefits, and Plaintiff alleged disability since the last date insured. (A.R. 302). Plaintiff claimed she had the following disabilities: 1) degenerative disc disease, 2) asthma, 3) headaches, 4) depression disorder, 5) anxiety disorder, 6) post-concussion syndrome, and 8) a cognitive disorder. (A.R. 17).

Plaintiff's application was denied initially, and was denied again upon reconsideration.

(A.R. 145, 153). After being denied, Plaintiff filed a written request for a hearing by an ALJ. (A.R. 159). Plaintiff and counsel appeared before an ALJ on February 19, 2019, at which time Plaintiff testified. (A.R. 57-78). On March 20, 2019 the ALJ concluded that Plaintiff was not disabled and denied Plaintiff's claim. (A.R. 121-38). But, then on June 8, 2020, the Appeals Council vacated the ALJ's decision denying Plaintiff's claim, and remanded to another ALJ, Beth Shillin,[1] for further consideration of Plaintiff's limitations in social interaction; while the first ALJ found that Plaintiff had moderate social limitations, the ALJ did not account for any social imitations in the RFC determination. (A.R. 141-42).

On December 8, 2020, the ALJ heard Plaintiff's case, and subsequently issued a decision denying Plaintiff's disability claim. (A.R. 15-26). After the Appeals Council denied Plaintiff's request for review, Plaintiff filed this appeal. (A.R. 1).[2]

## A. Review of Medical Evidence[3]

### i. Pain Mangement Specialist Dr. Yen

In 2012, prior to the relevant period for this case, Plaintiff was involved in a motor vehicle accident, where she injured her neck and back and experienced mild pain as a result. (A.R. 631). Following the 2012 motor vehicle accident, Plaintiff received treatment from pain management specialist Gary Yen, M.D., and continued her treatment with him during the relevant period. (A.R. 624). In March 2015, Plaintiff visited Dr. Yen to report lower back pain radiating to her right leg and neck pain radiating to her right arm. (A.R. 628). She reported that the prescribed medications helped with her pain and that she did not experience any side effects from them. (A.R. 628). Dr.

---

[1] The Court will hereinafter refer to ALJ Shillin as "the ALJ" throughout this Opinion.
[2] Although Plaintiff's counsel indicated that he had filed a reply brief, the reply brief is identical to the moving brief.
[3] Because Plaintiff's brief only raises her physical impairments on this appeal, the Court will summarize Plaintiff's medical records in that context.

Yen's examination revealed that Plaintiff had an antalgic gait, decreased range of motion in her cervical and lumbar spine, tenderness to palpation, a positive straight leg raising test on the right, 4/5 muscle strength, and decreased sensation in a C7 and L5 dermatomal pattern on the right. (A.R. 629).

On July 30, 2015, Plaintiff was in a second motor vehicle accident. (A.R. 631). When Plaintiff sought treatment at Dr. Yen's office the subsequent day, Plaintiff once again reported fatigue and nausea, as well as pain, and her exam yielded the same results as her first motor vehicle accident. (A.R. 631-34). Plaintiff was prescribed Percocet, in addition to the other medications, and she was referred to physical therapy for her neck and back pain (A.R. 631). Plaintiff continued to see Dr. Yen during the relevant period, and at her appointments, she had similar complaints of low back and neck pain, dizziness, nausea, and headaches, as well as an antalgic gait, decreased range of motion, strength, and sensation, and positive straight leg raising on the right. (*See, e.g.,* 631-33, 644-53, 673-74, 695, 704-05). An MRI of Plaintiff's cervical spine in November 2015, revealed a C6-C7 disc herniation, which caused diminution of the anterior subarachnoid space, narrowing of the lateral recess with bilateral foraminal stenosis, and mass effect of the exiting nerve root sleeves. (A.R. 645, 662). Plaintiff consistently denied any side effects from her medications, including memory impairment, sleepiness, constipation, nausea, itching, high, or buzz. (*See, e.g.,* A.R. 628, 635, 639, 672, 695, 704). She also sometimes reported improvements in her symptoms as a result of her prescribed medications and physical therapy. (A.R. 672, 695).

### ii.    Neurologists Dr. Song and Dr. Zhang

Plaintiff visited neurologist Haodong Song, M.D., in September 2015, for the first time. (A.R. 669). She complained of worsening headaches, sensitivity to motion accompanied by nausea, recurrent episodes of lightheadedness/dizziness, pain in the back of her neck, pain in the

lower back radiating to the right lower extremity, tingling and numbness in her extremities, difficulty sleeping, reduced concentration and attention, fatigue, and occasionally blurry vision. (A.R. 669). During her exam, her short-term memory was intact, and she had normal attention, normal muscle bulk and tone, full strength in all extremities, intact sensation, intact coordination, normal-based gait, no sensory motor deficits, and no cranial nerve abnormalities. (A.R. 669-70). Dr. Song diagnosed Plaintiff with post-concussion syndrome, advised that she continue a conservative treatment consisting of pain medications, and prescribed additional medication for headaches. (A.R. 669). The next month, Dr. Song again recommended continued conservative management plan of various pain medications, and ordered a brain MRI which showed no evidence of a traumatic brain injury. (A.R. 668, 671).

In December 2015, Plaintiff felt some improvement with her symptoms from an increased dose of pain medication, and the same conservative treatment was recommended for her. (A.R. 666). In February 2016, Plaintiff expressed a desire to reduce her pain medication dosage, even though she had reported improvements with the medication. (A.R. 664). Dr. Song agreed so long as Plaintiff's symptoms remained stable. (*Id*.) Then, in April 2016, Plaintiff sought to further reduce her headache medication so that she could eventually discontinue it altogether. (A.R. 656, 662). During three appointments in 2017, Plaintiff's symptoms were stable, and Dr. Song again recommended Plaintiff to continue a conservative management plan. (A.R. 698-703). While Plaintiff reported some worsening burning and tingling sensations in May 2018, for which Dr. Song advised a trial of Gabapentin, she otherwise continued on a conservative treatment. (A.R. 697).

On October 2, 2018, a few days after her date last insured, Plaintiff saw another neurologist, Pengfei P. Zhang, M.D., for the first time. (A.R. 737). She reported to Dr. Zhang that she had fully

4

recovered from her 2012 motor vehicle accident when the 2015 accident occurred, and since the 2015 accident, she experienced nausea, fatigue, short-term memory loss, peripheral neuropathy, around twelve headaches a month, and chronic pain in her neck and lower back. (A.R. 737-38). During the exam, Plaintiff had normal cognition, no pronator drift, normal muscle bulk and tone, 5/5 strength, a narrow gait, and intact toe, heel, and tandem walking. (A.R. 742). Even though Plaintiff reported sensory issues, Dr. Zhang did not observe any sensory loss upon examination. (A.R. 743). The doctor recommended increasing Plaintiff's dose of Gabapentin and noted that injections may be an option in the future. (*Id*). By the end of that month, Plaintiff reported that she was no longer taking Percocet or Naproxen; that she was only taking Ultram three or four days a week and Flexeril as needed; and that because of certain side effects, she quit taking Gabapentin completely. (A.R. 745). By December 2018, Plaintiff was only taking Ultram once a week and decided to quit all of her other medications. (A.R. 750). Her late October and December examinations yielded the same results as her examinations in early October 2018. (A.R. 748, 753).

### iii.    Physical Therapy

During the course of Plaintiff's physical therapy, her physical therapists recorded improvements in her symptoms, range of motion, and strength with treatment. (*See, e.g.,* A.R. 494, 502, 595, 597, 678, 731). For instance, in early April 2016, Plaintiff reported that her radicular complaints had minimized and that her headaches were less frequent. (A.R. 595). In May 2016, Plaintiff reported that she had no headaches and only mild radicular complaints, and that she was overall feeling great and considering stopping her physical therapy. (A.R. 619, 622).

However, Plaintiff returned to physical therapy in July 2016, when her symptoms returned for a few weeks and were worsening, and with therapy again, Plaintiff showed progress in reducing her symptoms and improving her overall strength and range of motion. (A.R. 680, 731). She

continued her physical therapy intermittently throughout 2017 and 2018. (*See, e.g.,* A.R. 714-15, 720).

### iv.    Consultative Examiner Dr. Potashnik

On January 18, 2017, Rashel Potashnik, M.D., performed a consultative examination of Plaintiff. (A.R. 688-91). Plaintiff reported back pain radiating down her right leg, numbness and tingling in her feet, and neck pain radiating into her right arm with right hand numbness and tingling. (A.R. 688). During her exam, she had a normal gait, generalized tenderness in her cervical and lumbar spine, normal range of motion, no palpable spasm, and negative straight leg raising tests in both the seated and supine positions. (*Id*). Plaintiff could also make a fist, separate papers, button buttons, and walk at a reasonable pace without an assistive device, and she had normal grip and pinch strength. (A.R. 690-91).

### v.    Medical Opinion Evidence

On March 25, 2015, a month after the beginning of the relevant period, Dr. Yen noted that he had treated Plaintiff since April of 2013, that MRIs in 2012 showed disc herniations at C6-C7 and L4-L5, and that an EMG showed right C7 and L5 radiculopathy. (A.R. 694). Dr. Yen stated that Plaintiff could not work because of her spinal injuries, that these injuries were permanent and would have permanent sequelae, and that her symptoms would wax and wane. (*Id*). [4] He also opined that Plaintiff should not lift more than five pounds, that she should not sit or stand more than thirty minutes at a time, and that she should not engage in repetitive bending or lifting because of her disc herniations in her cervical and lumbar spine. (*Id*). Dr. Yen explained that Plaintiff's

---

[4] Dr. Yen never updated Plaintiff's restrictions based on her impairments after Plaintiff was treated with physical therapy, pain medications, and others; as such, it is unclear whether those same restrictions would apply at the time the ALJ considered Plaintiff's claims.

6

pain will limit her ability to work, to perform daily living activities, and will have a negative effect on her quality of life. (*Id*).

On September 20, 2016, state agency medical consultant Arden Fusman, M.D., reviewed the record at the initial stage of review. (A.R. 94-96). Dr. Fusman found that Plaintiff could perform light work with postural, manipulative, and environmental limitations. (*Id*). She also found that Plaintiff could frequently balance, can never climb ladders, ropes, or scaffolds, and occasionally could climb ramps and stairs, stop, kneel, crouch, and crawl. (A.R. 94-95). Dr. Fusman limited Plaintiff to frequent reaching with the right arm, both laterally and overhead, and recommended that Plaintiff avoid concentrated exposure to extreme temperatures, wetness, and humidity, and even moderate exposure to pulmonary irritants and hazards. (*Id*).

On January 24, 2017, state agency medical consultant Seung Park, M.D., reviewed the record and endorsed the same limitations set by Dr. Fusman. (A.R. 111-14).

### B. Review of Testimonial Evidence

#### i. Plaintiff's Testimony

Plaintiff's first hearing occurred on February 19, 2019. (A.R. 52). During the hearing, Plaintiff testified before the first ALJ that her second motor vehicle accident exacerbated the neck and back injuries that she sustained from her first accident. (A.R. 63). She last worked as a respiratory therapist in October 2012, before relying on state disability benefits. (A.R. 59).

More specifically, Plaintiff testified that she suffers from pain in the lower back, upper back, neck, cervical areas, and legs. (A.R. 64). The pain triggers headaches and dizziness, and the neck pain radiates onto her right side while her leg pain radiates to her right ankle. (*Id*). She described the neck pain as a "shooting pain" that goes "on and off." (*Id*). Plaintiff also testified that she has neuropathy in both feet, which causes numbness in her feet. (A.R. 65). She experiences

migraines around three to four times a week, and each migraine lasts about a couple of hours. (A.R. 69).

To manage her pain, Plaintiff testified that she is prescribed various medications, including Percocet, in order to ease the pain and other symptoms. (A.R. 64). She explained that she takes the pain medication "when I must." (*Id*). Plaintiff testified that she is also treated with physical therapy for her back and concussion. (A.R. 67). Plaintiff explained that neither physical therapy nor the medication were providing her much relief. (A.R. 76).

In regards to Plaintiff's symptoms, Plaintiff testified that she has difficulty rotating her neck from side to side due to her cervical pain. (A.R. 65). Plaintiff claimed that her movements are restricted when it comes to sitting, standing, or walking, and she cannot sit for more than thirty minutes at a time. (*Id*). The best position for Plaintiff is lying down, which is what she does most of the time. (A.R. 75). She also testified that she cannot bend, stoop, kneel down, or carry any heavy objects. (A.R. 66). Furthermore, Plaintiff explained that she suffers from dizziness and nausea due to her migraine headaches. (A.R. 64). As an example, Plaintiff recounted that one time prior to February 19, 2019, she lost her balance and fell down in her kitchen, necessitating an emergency room visit. (A.R. 70). Plaintiff also testified that she experiences cognitive difficulties, including short-term memory loss. (A.R. 69).

Finally, Plaintiff expressed that she is unable to complete a range of daily activities, such as bathing, cooking, cleaning, doing laundry, shopping, etc. (A.R. 73). Instead, she relies on her parents with whom she resides. (*Id*).

### ii.    Vocational Expert's Testimony

On December 8, 2020, a second hearing was held after the June 8, 2020 Appeals Council

remanded the matter.[5] (A.R. 35). During the second hearing, the ALJ limited the hearing testimony

to hypothetical questions posed to the Vocational Expert, John Bopp (the "VE"), and relied on

Plaintiff's testimony from the first hearing to render her decision. (A.R. 39).  The VE began by

classifying Plaintiff's past work as a respiratory therapist, which has a DOT Code of 076.361-014,

a specific vocational preparation ("SVP") of 6, and although normally categorized as a medium

exertional occupation, in Plaintiff's case, it was performed at a heavy exertional level. (A.R. 40-

41).

> The ALJ proceeded to ask the VE the following hypothetical question:
>
> And if I were to take a hypothetical person of the claimant's age, education, and work history and put that person at a sedentary exertional limit . . . . with no ladders, scaffolds, ropes, heavy machinery or heights. Only occasional stairs, ramps, crouching, crawling, stooping, kneeling, and balancing with frequent handling, fingering and feeling with the dominant arm . . . . With occasional exposure to environmental pollutants or extremes of temperature or humidity with . . . . frequent reaching in all directions, including overhead, with the dominant arm [and] simple repetitive and routine tasks . . . . is there other work in the national economy that such a person would be able to do?

(A.R. 41-43). The VE replied, "I believe so." (A.R. 43). The VE then clarified examples of work

that the hypothetical individual could perform, including that of a document preparer with an

estimated 15,000 full-time jobs nationally, a cutter and paster with an estimated 10,000 full-time

jobs nationally, and an addresser, with an estimated 2,500 full-time jobs nationally, all of which

only require sedentary exertions. (*Id.*) The ALJ then proceeded with a second hypothetical:

> And if we were to take our person in hypothetical 1 and change the contact with the general public to no contact with the general public and only occasionally contact with coworkers and supervisors, would that change the availability of the jobs you gave me?

(*Id.*) The VE replied, "No, it would not." (*Id.*) The ALJ then asked the VE whether a further

---

[5] As noted, *supra*, the Appeals Council vacated the first ALJ's decision and remanded the case for further consideration of Plaintiff's limitations in social interaction, because the first ALJ failed to take those limitations into account in the RFC determination. (A.R. 141).

restriction to the option to sit or stand at will within the workstation while remaining on task would change the available of jobs, to which the VE replied, "No, it would not." (A.R. 44). The ALJ further asked whether a person who would be off task for 15% or more of the day and absent more than once per month would be able to find any employment, to which the VE replied, "No, they wouldn't be able to maintain competitive employment with those limitations." (*Id.*) The VE clarified, however, that an individual could be off-task for about 10% of the time and still be able to maintain full-time employment.

### C. ALJ Decision

On December 29, 2020, the ALJ issued an unfavorable written decision for Plaintiff, finding that Plaintiff had failed to satisfy her burden of demonstrating disability under the standard five-step process. (A.R. 15-26). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability. (A.R. 17). At step two, the ALJ found that Plaintiff's degenerative disc disease, asthma, headaches, depression disorder, anxiety disorder, post-concussion syndrome, and cognitive disorder were severe impairments that significantly limited her ability to perform basic work activities as required by SSR 85-28. (*Id.*) At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the relevant CFR. (A.R. 18).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff cannot climb ladders, scaffolds, ropes, or work with heavy machinery or at heights. (A.R. 19). At step four, the ALJ found that Plaintiff as unable to perform any past relevant work. (A.R. 24). At step five, the ALJ determined that given Plaintiff's age, education, work experience, and her RFC, there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform. (A.R. 25).

## II.   <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the

11

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id*. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id*. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. *Id*. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." *Id*. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the

impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). *Id*. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See id*. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can

perform work and not disabled.  (*Id*.)

### III.  PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff, first, maintains that the ALJ failed to accord proper weight to Plaintiff's treating physician, Dr. Yen, according to the treating physician rule. (Pl. Br. at 9-12). Second, Plaintiff argues that the ALJ failed to take into account the sedating side effects of Plaintiff's medications. (Pl. Br. at 12-13). Next, Plaintiff contends that the ALJ selectively interpreted and mischaracterized the medical evidence in the record. (Pl. Br. at 13-15). Specifically, Plaintiff maintains that the ALJ focused too heavily on the fact that Plaintiff's treatment from her physicians remained conservative through physical therapy and pain medications. (Pl. Br. at 13). Finally, Plaintiff argues that the ALJ disregarded the VE's conclusion that no sedentary work would be available for Plaintiff if she were off task more than 10% of a work day or suffered absenteeism greater than one day per month. (Pl. Br. at 15).

### A.  The ALJ Properly Evaluated and Weighed Dr. Yen's Opinion

Plaintiff argues that the ALJ failed to accord Dr. Yen's opinion with proper weight in accordance with the treating physician rule, which was in place at the time the claim was filed.[6] I disagree, and find that the ALJ properly considered Dr. Yen's opinion in her analysis.

When analyzing a medical opinion for claims filed before March 27, 2017, the ALJ cannot reject a treating physician's opinion on the basis of speculation or lay opinion, and may only outrightly reject a treating physician's opinion on the basis of contradictory medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). But, even though greater weight should be afforded to the findings of a treating physician, rather than those of a consulting physician, a

---

[6] The standard for claims filed after March 27, 2017 provides no preferential treatment to the opinions of treating physicians. 20 C.F.R. § 404.1520c.

treating physician's conclusion that a plaintiff is disabled or unable to work is not dispositive. *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). Instead, the ALJ must weigh the relative worth of a treating physician's report against the reports of other physicians who have examined the patient. *Id*. at 48. If a treating physician's opinion conflicts with the medical record, the ALJ may accord that opinion less weight, or even reject it outright, so long as a reasonable explanation is given. *Morales*, 225 F.3d at 317; *Ramos v. Colvin*, No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) ("An ALJ can reject a treating physician's opinion . . . where the opinion is . . . inconsistent with other substantial evidence of record." (citation and internal quotation marks omitted)). Ultimately, it is within the province of the ALJ to decide which physician to credit, but the task must be performed by considering all of the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Here, the ALJ accurately summarized Dr. Yen's opinion and appropriately gave it partial weight. Plaintiff argues that the ALJ was substituting her own opinion over Dr. Yen's medical opinion, and the ALJ's conclusion on this issue contradicts the totality of the medical evidence in the record. (Pl. Br. at 11). The ALJ, in rendering her decision, was clearly relying on medical records from other physicians instead of substituting her own opinion, as Plaintiff claims. (A.R. 23). During Plaintiff's medical exams with her treating physician, she had complaints of lower back and neck pain, dizziness, nausea, and headaches, as well as an antalgic gait, decreased range of motion, strength, and sensation, and positive straight leg raising on the right. (*See, e.g.,* 631-33, 644-53, 673-74, 695, 704-05). Dr. Yen opined that Plaintiff's injuries were permanent, painful, ongoing with waxing and waning in the future. (A.R. 694). Specifically, he reported that the claimant should not lift greater than five pounds, sit or stand for greater than thirty minutes, and do repetitive bending or lifting due to a herniated disc involving her cervical and lumbar

spine. (*Id*.) Overall, Dr. Yen claimed that Plaintiff's pain would limit her ability to work, perform activities of daily living, and would have a negative effect on her quality of life. (*Id*.) The ALJ correctly compared Dr. Yen's opinion with inconsistent medical record evidence showing that Plaintiff did have tenderness and a limited range of motion, but retained a normal gait, the ability to squat and walk on heels and tiptoes, and a negative straight leg raising test. (A.R. 23-24, citing A.R. 688-93, 695-703, 704-06). The ALJ relied on objective evidence by citing to parts of the record indicating that Plaintiff consistently displayed normal muscle bulk and tone, 5/5 strength, full strength in all amenities, intact sensation, intact coordination, a normal-based gait, and no sensory motor deficits during her examinations with other physicians. (*See* A.R. 670, 742-43). The ALJ also points to Dr. Fusman's medical opinion, which found that Plaintiff could perform light work with certain postural, manipulative, and environmental limitations. (A.R. 24). Despite these inconsistencies within the medical record, the ALJ still gave Dr. Yen's opinion partial weight by limiting Plaintiff to sedentary work with a sit-stand option along with postural, manipulative, and environmental limitations. (A.R. 24).

I find, therefore, that the ALJ's decision to discount Dr. Yen's opinions and assigning them partial weight, but only after considering all of the available evidence in the record, is supported by substantial evidence. As such, I affirm the ALJ's findings in this context.

## B. Substantial Evidence Supports the ALJ's Decision with Respect to Potential Medication Side Effects

Next, Plaintiff argues that the ALJ failed to take into account the sedating effects of her pain medications, including drowsiness and dizziness, into the RFC determination. (Pl. Br. at 12 n.1). Plaintiff claims that her medications' common side effects impacted additional non-exertional limitations that would cause her to be off-task during the workday to such a degree that she would be unable to maintain the consistency needed to perform substantial gainful

employment. (Pl. Br. at 13). I disagree.

First, nowhere during the February 19, 2019 hearing did Plaintiff testify as to the purported side effects. Rather, Plaintiff claims, now on appeal, that because the pain medications she was taking were commonly known to cause side effects, the ALJ should have, *sua sponte*, considered those side effects when deciding Plaintiff's RFC. But, Plaintiff never raised this issue before the ALJ. Nevertheless, medical records belie Plaintiff's position. During her pain management appointments within the relevant period, Plaintiff consistently conveyed to her physicians that she was not experiencing any side effects from her pain medications, including memory impairment, sleepiness, constipation, nausea, itching, high, or buzz. (A.R. 628, 635, 639, 672, 695, 704).

Furthermore, even if the ALJ erred by not identifying any potential medical side effects, which Plaintiff, herself, denied at multiple appointments, the ALJ still considered the extent to which Plaintiff's symptoms of dizziness and fatigue, from her impairments, affected her ability to work. (A.R. 20-22). Indeed, the ALJ acknowledged these symptoms and noted that Plaintiff's symptoms were treated conservatively and remained stable. (A.R. 22). Notwithstanding, the ALJ further included certain limitations in the RFC, such as a limitation to sedentary work and a restriction from climbing ladders, ropes, or scaffolds, and work with heavy machinery or heights, that took into account Plaintiff's complaints of dizziness and fatigue. (A.R. 19). Thus, I do not find that the ALJ erred in this context, and that her decision was supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003) (finding harmless error when the ALJ failed to consider the effect of plaintiff's symptoms on his ability to engage in gainful employment because it "would have had no effect on the ALJ's decision").

**C. The ALJ Properly Considered Plaintiff's Conservative Treatment Plans in Deciding Plaintiff's Claim**

Plaintiff argues that the ALJ placed too much weight on the fact that Plaintiff's treatment remained conservative in nature in order to discount Plaintiff's disabling condition. Rather, Plaintiff explains that her age and physical impairments, surgery, or other drastic treatments, would have been a radical decision, such that the conservative treatment was the only necessary course. (Pl. Br. at 13-14). However, nowhere in the record did doctors ever recommend or suggest surgery for Plaintiff; instead, a conservative treatment plan was continuously recommended for Plaintiff's symptoms by her physicians. (A.R. 656, 662, 666, 668-69, 671, 697-703). While Plaintiff argues that surgery would have been a drastic option due to her age and physical impairments, the record shows that the decision to treat Plaintiff conservatively was based on her physicians' opinions that Plaintiff's conditions only required conservative treatment. Thus, I find that the ALJ was justified when she relied on Plaintiff's conservative treatment plans to discount the intensity and duration of Plaintiff's complaints of pain, nausea, dizziness, headaches, numbness, and restrictions on her mobility. (A.R. 21-22).[7] *See Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 60 (3d Cir. 2017) (finding that a plaintiff's credibility as to his severe pain and physical limitations was undermined due to his reliance on conservative treatment); *Scouten v. Comm'r of Soc. Sec.*, 722 F. App'x 288, 291 (3d Cir. 2018) (finding that the ALJ properly relied on objective medical evidence of conservative treatment to discount the plaintiff's testimony about the severity of her assertions); *Milano v. Comm'r of Soc. Sec.*, 166, 171 (3d Cir. 2005) (finding that a plaintiff's allegations as to the extent of her pain were undermined by her

---

[7] In fact, medical records showed that Plaintiff's symptoms even improved through the use of conservative treatments like physical therapy, and that Plaintiff considered discontinuing physical therapy altogether because of this improvement. (A.R. 656, 662).

conservative treatment).

Lastly, Plaintiff argues that the ALJ conflated improvement with stability when determining Plaintiff's RFC (Pl. Br. at 14), but nowhere in her decision did the ALJ state that stability meant anything besides the fact that Plaintiff's symptoms remained the same and did not otherwise worsen during the relevant period. (A.R. 22). When formulating Plaintiff's RFC, the ALJ did not suggest that Plaintiff's symptoms improved; rather, the ALJ noted Plaintiff's stable condition and conservative treatment in the RFC determination. (*Id.*) Indeed, while Plaintiff argues that her symptoms worsened when she saw Dr. Song for her neurologic treatments, that contention is undercut by recommendations for conservative treatment for those symptoms. (A.R. 697). Additionally, the medical record indicates relative stability in Plaintiff's normal sensations, gait, strength, and muscle bulk throughout the relevant period. (A.R. 670, 688-91, 742-43). Therefore, the ALJ's reliance on Plaintiff's conservative treatments in reaching her opinion was based on substantial evidence.

### D.  Substantial Evidence Supports the ALJ's RFC Finding

Finally, Plaintiff argues that the ALJ incorrectly found in Plaintiff's RFC that she was capable for performing sedentary work. Plaintiff explains that due to the frequency and severity of her migraine headaches and cervical and spinal pain, Plaintiff would have to be off-task more than 10% of a work day, and would likely suffer absenteeism for greater than one day per month, and that the VE testified that with such conditions, combined, would preclude any sedentary work available for Plaintiff. (Pl. Br. at 15). In that regard, Plaintiff claims that the ALJ improperly disregarded the VE's conclusions, and should have followed the VE's findings and concluded that substantial gainful employment would not have been viable for Plaintiff. (*Id.*)

"[RFC] is defined as that which an individual is still able to do despite the limitations

caused by his or her impairment(s)." *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft*, 181 F.3d at 359 n.1); *see* 20 C.F.R. § 404.1545(a). When a case is brought to an administrative hearing, the ALJ "is responsible for assessing [] residual functional capacity." 20 C.F.R. § 404.1546(c). This means that the "ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In making an RFC determination, "the ALJ must consider all evidence before [her]," and, although the ALJ may weigh the credibility of the evidence, she must "give some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Further, "[w]here the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (internal quotation marks and citation omitted).

Here, I find that the ALJ's RFC determination that Plaintiff could perform sedentary work was based on substantial evidence. Plaintiff's RFC arguments rest on the fact that her migraine headaches and other pain complaints would lead to further off-task and absenteeism limitations and that the VE's testimony about those limitations precluded any available sedentary work for Plaintiff. (Pl. Br. at 15). But "the ALJ need only include the in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007). A lack of evidentiary support in the medical record is a legitimate reason for excluding Plaintiff's claimed limitations from her RFC. *Id*. When submitting the RFC to the VE, the ALJ is not required to submit every impairment alleged by the claimant, but is only required to submit those limitations that are medically and credibly established. *Rutherford v. Barnhart*, 399 F.3d 546,

554 (3d Cir. 2005). Thus, a plaintiff's objections to the adequacy of hypothetical questions posed to the VE are often attacks on the RFC assessment itself, *Id*. at 554 no. 8, and if the ALJ did not incorporate the limitation in the RFC, then the ALJ is not required to incorporate the limitation into hypothetical questions posed to the VE. *Pidgeon v. Colvin*, No. 15-2897 (JBS), 2016 WL 2647666, at *13 (D.N.J. May 9, 2016).

In rendering her decision on Plaintiff's RFC, the ALJ combed through the entire medical record and properly concluded that there were inconsistencies between Dr. Yen's opinions about Plaintiff's symptoms and Plaintiff's subjective pain complaints and the rest of the medical record. (A.R. 22). As the ALJ stated, despite Plaintiff's complaints of her pain, the medical record showed unremarkable findings in regards to her MRI results, Plaintiff's continued conservative treatment of physical therapy and pain medications during the relevant period, and her improvements in her range of motion in the cervical and lumbar spines through physical therapy and medication. (A.R. 21-22). The ALJ noted how the medical record failed to support Plaintiff's claims of marked functional limitations when it comes to accomplishing daily living tasks. (A.R. 21). Regarding Dr. Yen's examinations revealing that Plaintiff had an antalgic gait, decreased motor strength, and decreased sensation in the bilateral upper and lower extremities, the ALJ pointed to other orthopedic consultative examination results where Plaintiff was able to stand with a normal unassisted gait, squat, and walk on her heels and tiptoes. (*Id*.) Additionally, the ALJ gave partial weight to two state agency medical consultants' findings that the claimant could perform light work with certain postural, manipulative, and environmental limitations. (A.R. 24). Because the ALJ expressly discussed Plaintiff's symptoms and medical records in deciding Plaintiff's RFC, I find that the ALJ's conclusions of Plaintiff's RFC for sedentary work is supported by substantial evidence.

## IV.  **CONCLUSION**

For these reasons set forth above, the ALJ's decision is **AFFIRMED**. An appropriate

order shall follow.


Date:   June 22, 2022                                    /s/ Freda L. Wolfson
                                                         Freda L. Wolfson
                                                         U.S. Chief District Judge